United States District Court
Southern District of Texas
**ENTERED**
December 05, 2018
David J. Bradley, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOHNNY RAY PARTAIN, | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **Civil Action No. B-16-317** |
| | § | |
| CITY OF SOUTH PADRE ISLAND, TEXAS, | § | |
| DENNIS W. STAHL, ANNA D. STAHL & | § | |
| VICTOR CARRANZA[1], | § | |
| **Defendants.** | § | |

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On September 19, 2018, Defendants City of South Padre Island ("the City") and Dennis Stahl filed a motion for summary judgment. Dkt. No. 38. On that same day, Defendant Anna Stahl also filed a motion for summary judgment. Dkt. No. 43.

On October 10, 2018, Plaintiff Johnny Ray Partain ("Partain") filed an omnibus response to the motions for summary judgment. Dkt. No. 50. On October 23, 2018, the City

---

[1] According to the complaint, Carranza has been sued "in his official capacity," and not in his individual capacity. Dkt. No. 1-1, p. 3. As such, the suit is "to be treated as a suit against the entity" which employs that defendant. Kentucky v. Graham, 473 U.S. 159, 166 (1985). Thus, any claims against Carranza in his official capacity are co-extensive with any claims against the City. For that reason, the Court will consider whether the City should be held municipally liable for Carranza's actions.

The Court notes that Carranza has been called up to active duty military service and will be on active duty in Afghanistan until January 2020. Dkt. No. 60-10. Thus, to the extent that Partain would seek to hold Carranza individually liable, the Court would almost certainly have to stay the entire case until April 2020. 50 U.S.C. § 3932(a)(1) (providing a stay of all proceedings during the period of active duty service as well as within 90 days after release from service). Given that Carranza has only been sued in his official capacity – making any suit against him a suit against the City – his military service does not materially affect his ability to defend himself against this action. See Ricard v. Birch, 529 F.2d 214, 216 (4th Cir. 1975) (a military service member is entitled to a stay "if his service materially affects his ability to prosecute or defend the action."). Moreover, given the Court's other recommendations, the result in this case is unaffected by Carranza's status.

1

filed a reply brief.  The motions for summary judgment are currently pending before the Court.

After reviewing the record and the relevant case law, it is recommended that the motions for summary judgment be granted.  Partain has not shown a genuine dispute of material fact as to any of the claims against any Defendant.

## I. Background

### A. Factual Background

On April 1, 2014, Dennis Stahl hired Jon Wilson to serve as the general contractor for a "major renovation" of his home on South Padre Island. Dkt. No. 38-21, p. 4.  As part of the renovation, Stahl wanted a generator installed on the property. Id, p. 5.

Wilson researched different generator manufacturers and chose a model offered by Generac. Dkt. No. 38-21, p. 6.[2]  The chosen generator was "a little more than four feet wide and a little longer than eight foot long." Id, p. 7.  Generac referred them to Partain, who was a local authorized representative for Generac. Id, p. 6.  Wilson explained that "when you purchase a big piece of machinery, like that, to be able to get a warranty, you have to have an actual rep start it for you." Id.

On June 3, 2014, Wilson and Stahl met with Partain to discuss the generator. Dkt. No. 38-21, p. 8.  After discussing the chosen generator, Partain issued an invoice for $24,369.24 for the generator and the assorted parts that would be needed to set it up. Dkt. No. 38-3.  Wilson explained that the money needed to be paid before the generator was delivered, because the generator was going to be custom built at the factory. Dkt. No. 38-21, pp. 7-8.  Stahl paid Partain on that date with a personal check. Dkt. No. 38-1, p. 65; Dkt. No. 50-3, p. 18.

---

[2] Wilson's sworn testimony was offered at Partain's criminal trial, where Partain's attorney had the opportunity to cross-examine him. Dkt. No. 38-21.  As such, it is competent summary judgment evidence. Pheasantry Films v. Gen. Elec. Capital Corp., 15 F.3d 1079 (5th Cir. 1994).

Wilson also explained that it would be customary for the general contractor – i.e. Wilson – to pay for the generator, but Wilson did not have his checkbook with him on June 3rd. Dkt. No. 38-21, p. 10.  Wilson stated that Stahl paid for the generator that day because "we had agreed on the size and the price of the unit and we were under a timeline that we wanted to get the project finished." Id.  Partain had informed Wilson and Stahl that it would take four to six weeks to build the generator, creating an estimated delivery window between July 3 and July 17, 2014. Id.

Partain stated that he "didn't think" that Stahl had any ill will toward him at the time that the generator was purchased. Dkt. No. 38-1, p. 27.

On August 19, 2014, Wilson contacted Generac and spoke with a representative named Shawna Gleason. Dkt. No. 38-4, p. 2.  Gleason told Wilson that the generator had been manufactured, but that Partain had not paid for it yet. Id.

On August 28, 2014, Generac notified Partain that the order for the generator was cancelled for lack of payment. Dkt. No. 38-20, p. 7.

After the deadline passed, and no generator had been delivered, Wilson contacted Partain, seeking a definite delivery date for the generator. Dkt. No. 38-21, pp. 12-13.  By the beginning of September 2014, Partain stopped responding to any calls, texts or emails from Wilson. Id.  Partain also stopped returning Stahl's calls, because he thought Stahl was "threatening" him and Stahl "was upset with the whole situation." Dkt. No. 38-1, p. 65.

On October 10, 2014, Wilson – as Stahl's general contractor – went to the South Padre Island police department to file a report for theft, based upon Partain taking Stahl's money and never delivering the generator. Dkt. No. 38-21, p. 15.  Wilson did not file charges that day. Id.  That was on Friday; Wilson spent the entire weekend calling, texting and emailing Partain. Id.  In one email, Wilson informed Partain that he had spoken to the police; that email had a delivery receipt which informed him that Partain had read that email. Id, pp. 15-16.  Partain never responded to any of Wilson's communications.

On October 14, 2014, Wilson returned to the South Padre Island police department and informed them that he wished to press charges. Dkt. No. 38-21, p. 15-17.

On October 27, 2014, Detectives Victor Carranza and Jaime Rodriguez of the South Padre Island police department, interviewed Partain. Dkt. No. 38-17.  Carranza read Partain his Miranda rights prior to the interview. Id; Dkt. No. 38-6.  Partain "agreed that he had been paid for the generator, but explained that he had used the money for other projects." Dkt. No. 38-17. Carranza, in a sworn affidavit for this case, stated that "a timeframe was given to [Partain] to return the money, but he did not meet that requirement." Id.  From other evidence in this case, it appears that the detectives informed Partain that if Partain and Stahl could amicably resolve their dispute, then no charges would be filed. Dkt. No. 50-3, p. 1.

The next day – October 28, 2014 – various parties in this case exchanged a flurry of emails, which illuminated the disputes at the heart of this case.

At 9:57 a.m., Partain sent the following email to Stahl:

> I spoke to Padre Island police yesterday regarding your theft complaint. While I believe it is without merit, it does raise the question of when I can deliver your generator.  Attached is a copy of an invoice from Generac showing a zeroed invoice for the order.  I assume that Generac cancelled the order when Padre Island police contacted them last week.  Normally, I am bound by contract to pay Generac for what I order, but it appears that is no longer the case in this instance.  Consequently, this leaves me with two options: to reorder the generator or to refund your money.  I think you would agree with me that refunding your money would be preferable.  I will need 60 days to fully recover your monies.  I apologize for the frustrations and I will give you a call this afternoon.
> Dkt. No. 50-3, p. 3.

Roughly 30 minutes later, at 10:34 a.m., Stahl responded and sent a copy of his response to several people, including Wilson, Carranza, Rodriguez, and City Police Chief Randy Smith. Dkt. No. 50-3, p. 2.  Stahl responded:

> First, you have a third option . . . arrest for criminal theft of over $20,000.  I want you arrested and charged.  The order was placed 6/3/14. What a preposterous offer!  Wait 60 more days until January 2015 for a refund.

4

I guess your story at that time was that Santa didn't deliver the cash at Christmas! You stole my deposit and have made no effort to repay. We have been in contact with Generac all along. Your "invoice" attached with a zero balance is another joke. All you did was cancel the order . . . another delaying tactic. If you were bound by Generac to pay for the order, you never did. Another lie.

DO NOT call me. WE called you over 20 times and you lied to us or never returned our calls. You stole the money. Then you had the nerve to think your $20,000 theft was a "civil" matter – really? You had NO intention to deliver a generator or a refund. What a surprise when you heard it was criminal! The South Padre Island Police Department has done their job. You are a thief and I want you arrested, charged and convicted.

Dkt. No. 50-3, p. 2 (ellipses and capitalizations original).

Stahl's email signature block referred to himself as "City Councilman Elect" for the South Padre Island City Council. Dkt. No. 50-3, pp. 2-3.

Approximately 45 minutes later, at 11:18 a.m., Partain responded:

Everything that you just said is either untrue or a large exaggeration. It was also made clear to me yesterday that you have hounded the police department to their distress every single day to prosecute me. I wondered who could abuse the police like this and now that you've introduced yourself councilman, it has become clear that you are using the city's resources and your elected position to meet your ends. It also illuminates why you have an abusive reputation. I am familiar with politics and these tactics, and qualified immunity will not protect anyone that abuses county or city processes to cause harm.

Dkt. No. 50-3, p. 2.

Approximately an hour later, at 12:28 p.m., Rodriguez emailed Partain, with Detectives Carranza, Stahl, and Jon Wilson also being sent copies. Rodriguez's email was as follows:

This is Detective Jaime Rodriguez with the South Padre Island Police Department. I am the one that interviewed you along with Detective Victor Carranza in regards to South Padre Island Police Department Case #14-02029 Theft. I will take responsibility for advising you that if you made contact with Mr. Stahl between yesterday and Wednesday to resolve the matter and that if you and Mr. Stahl came to an agreement, then our investigation would be completed.

5

Although as I have read your emails to Mr. Stahl and you have twisted the words of our interview yesterday and made it appear that this agency to include Detective Victor Carranza and I are being hounded for a prosecution. I can assure [you] as I did clearly state to you yesterday if that would have been the case you would have been arrested yesterday and charged with Felony Theft.

I further advised you that I wanted to remain unbias[ed] in this investigation and wanted to give you an opportunity to get this matter resolved. You have taken that opportunity to twist words and the direction I thought you would take. I am now requesting you to cease any type of communication with Mr. Stahl. Your failure to cease communication could result in additional criminal charges being filed on you not by Mr. Stahl but by the State Of Texas. The content of your emails are clearly not to clear this matter up with Mr. Stahl and it further appears that you are trying to shift the blame of you violating Texas State Law Penal Code 31.03 to someone else and a personal vendetta against this agency and Mr. Stahl.

This email will be considered your notification not to make contact with Mr. Stahl in any manner. Should you have any questions or need additional information you have Detective Victor Carranza's and my contact information. Please do not hesitate to contact us and let us know what your inten[t] is by tomorrow morning in order for this agency to take appropriate actions on this investigation. Your attention on this matter would be greatly appreciated.

Dkt. No. 50-3, p. 1.

At some point after this email exchange, Carranza contacted the Cameron County District Attorney's Office and spoke with an unidentified attorney in that office. Dkt. No. 38-17. The attorney advised Carranza that he had sufficient probable cause to have Partain arrested and that "this was not a civil matter based on the information the investigation revealed." Id, pp. 1-2.

On October 29, 2014, Carranza swore out a probable cause affidavit for an arrest warrant against Partain for third degree theft, in violation of Texas Penal Code § 31.03. Dkt. No. 38-8. The affidavit was presented to Magistrate Paul Hemphill of the City of South Padre Island Municipal Court. Id.

In his probable cause statement, Carranza informed the Court that on June 3, 2014, Stahl had written a check for $24,369.24 for delivery of the generator, but that when the delivery date of July 29, 2014, arrived, Partain "could not be located." Dkt. No. 38-3, p. 2. It further stated that "several attempts were made by both Jon Wilson and Dennis Stahl to communicate with Johnny Ray Partain by phone, text and emails[,] but to no avail." Id.  It also noted that Generac business records showed that the generator was ready for pickup, but had not been paid for yet. Id.

The affidavit also stated that Carranza and Rodriguez "attempted to contact Johnny Ray Partain several times via telephone to no avail." Dkt. No. 38-8, p. 2.  The affidavit further stated that Stahl's check had cleared Partain's account, giving Partain access to the money. Id.  Carranza's affidavit also stated that Partain "was unable to provide a delivery date for the generator nor a time when he could return Dennis Stahl's money." Id.

The affidavit did not mention that Carranza and Rodriguez had interviewed Partain, nor did it reflect that Partain was told that if he and Stahl could reach an amicable settlement that the case would be closed, or that Partain had emailed Stahl the previous day and offered to return the money within 60 days. Dkt. No. 38-3.

On October 29, 2018 – that same day – Hemphill, based on the affidavit, signed an arrest warrant for Partain to be arrested on charges of third degree felony theft. Dkt. No. 38-9.

On November 4, 2014, Stahl "was elected to fulfill an unexpired term" on the South Padre Island City Council. Dkt. No. 38-2.

On November 5, 2014, Partain voluntarily surrendered himself at the South Padre Island Police Department. Dkt. No. 38-17.  On that same day, Hemphill set bond at $5,000. Dkt. No. 38-10.  "Shortly after" the bond was set, Partain posted bond and was released. Dkt. No. 38-17.

On November 14, 2014, Stahl was sworn in as a council member. Dkt. No. 38-2.

In January 2015, a state grand jury indicted Partain on one count of third degree felony theft. Dkt. No. 38-12.

On December 11, 2015, after a two-day jury trial in the 404th District Court, Partain was found guilty of theft as a state jail felony. Dkt. No. 38-13.

On January 5, 2016, Partain was sentenced to two years of incarceration and five years of probation. Dkt. No. 38-14.

On November 16, 2017, the Court of Appeals for the Thirteenth District of Texas reversed the conviction and rendered an acquittal. Dkt. No. 38-15. The appellate court found that, because the case stemmed out of a contractual dispute, Texas law required that Partain's intent to deprive Stahl of his funds must "have been present at the contract's formation." Id, p. 13. In other words, "there must be some evidence from which a rational fact-finder could conclude that Partain never intended, even at the outset, to perform fully or satisfactorily on the contract, and always harbored" an intent to deprive Stahl of his funds. Id (emphasis original).

The appellate court found that "there was insufficient evidence that Partain acted with the requisite intent required for a theft conviction," under those circumstances. Dkt. No. 38-15, p. 14. The appellate court did observe that under the Texas Property Code, it is illegal for contractors to use construction payments for any purpose other than what is has been earmarked for, but that no such charges were brought against Partain. Id. [3]

On January 8, 2018, the 404th District Court expunged Partain's arrest and conviction relating to the theft charges. Dkt. No. 50-3, p. 6.

_____

[3] Partain was convicted of theft of more than $1,500, but less than $20,000, which is a state jail felony. TEX. PENAL CODE § 31.03(e)(4)(A) (2017). A state jail felony carries a sentence of between 180 days and two years of incarceration. TEX. PENAL CODE § 12.35(a). The misapplication of over $500 in construction trust funds is a Class A misdemeanor. TEX. PROP. CODE § 162.032(a). Class A misdemeanors carry a maximum sentence of one year of incarceration. TEX. PENAL CODE § 12.21(2).

**B. Procedural History**

On November 20, 2015, Dennis & Anna Stahl sued Atlas Technologies and Partain in Cameron County Court at Law No. 1. Dkt. No. 50-3, p. 12.  The Stahls sued for breach of contract, conversion, theft, and fraud. Id.

On June 13, 2016, Partain filed a counter-claim against the Stahls, the City of South Padre Island and Carranza. Dkt. No. 1-1, p. 3.  Partain asserted a quantum meruit claim against the Stahls.[4] Dkt. No. 1-1, p. 6.  Against all of the counter-defendants, Partain made a § 1983 claim for deprivation of civil rights, and a Racketeer Influenced Corrupt Organization claim. Id.  Partain sued Carranza in his official capacity, but did not state whether he was suing the Stahls in their individual or official capacities. Id.[5]

On that same day, Partain filed a notice of removal, removing the case to federal court. Stahl v. Atlas Technologies, Civil No. 16-144 (S.D. Tex. 2016) (Olvera, J., presiding) (hereafter "Case 144"), Dkt. No. 1.

On August 5, 2016, the Court sua sponte remanded the case to state court. Case 144, Dkt. No. 9.  The Court found that federal jurisdiction can only be created by claims in the plaintiff's complaint, as opposed to a defendant's counterclaim. Id, p. 3.  The Court further found that the Stahl's complaint did not raise any federal claims, so there was no federal jurisdiction in this case, ordering that the case be remanded to state court. Id.

On November 29, 2016, the state court severed Partain's federal counterclaims into a separate action from the Stahls' original complaint. Dkt. No. 7-1.  Then, on December 22, 2016, the City of South Padre Island removed that severed case to this Court. Dkt. No. 1.

---

[4] The quantum meruit claim remains in state court and is not considered in this case. Dkt. No. 7.

[5] The Court will assume that Partain was suing the Stahls in both their individual and official capacities.  The individual capacity claims will be addressed in the analysis section.  As previously noted, any official capacity suit is a suit against the entity, so the analysis of the claims against the City will serve as the analysis for any claims against the Stahls in their official capacities. Graham, 473 U.S. at 166.

On January 6, 2017, the Court <u>sua</u> <u>sponte</u> stayed this case, pending the resolution of Partain's direct appeal of his theft conviction. Dkt. No. 5.  The Court noted that the resolution of the direct appeal would bear on whether Partain could pursue his claims or whether they would be barred under the Supreme Court's holding in <u>Heck v. Humphrey</u>, 512 U.S. 477, 486-87 (1994). Dkt. No. 5.

On November 21, 2017 – five days after the Texas appellate court reversed Partain's conviction – the Court lifted the stay in this case. Dkt. No. 10.

On September 19, 2018, Defendants City of South Padre Island and Dennis Stahl filed a motion for summary judgment. Dkt. No. 38.  The City and Dennis Stahl argue that (1) Partain's constitutional rights were not violated; (2) there was no municipal policy which violated his constitutional rights; (3) even if Partain's constitutional rights were violated, Stahl is entitled to qualified immunity; and, (4) Partain cannot sustain a RICO claim. <u>Id</u>.

On that same day, Anna Stahl filed a motion for summary judgment. Dkt. No. 43. Anna Stahl argued that Partain cannot show that she violated his constitutional rights or violated RICO. <u>Id</u>.

On October 10, 2018, Partain filed a combined response to both motions for summary judgment. Dkt. No. 50.  In his response, Partain argues that the Defendants violated:  (1) his Fourth Amendment and Fourteenth right to be free from malicious prosecution; (2) his Fourteenth Amendment right to equal protection; and, (3) used the City of South Padre Island as a racketeering enterprise in violation of RICO. <u>Id</u>.    On October 23, 2018, the City and Dennis Stahl filed a reply brief. Dkt. No. 52.

On November 13, 2018, Partain filed a request for entry of default against Carranza. Dkt. No. 56.  On November 30, 2018, the City filed a motion to strike Partain's motion for entry of default against Carranza. Dkt. No. 60.  The City argued that Carranza was not properly served.[6] <u>Id</u>.

_____

[6] As noted earlier, Partain only sued Carranza in his official capacity. Dkt. No. 1-1, p. 3. Because an official capacity suit is a suit against the City, the Court need not determine whether

Thus, after numerous filings and removals and cross-allegations – as well as an almost two year stay – Partain's claims are now properly before the Court for consideration.

## II. Applicable Law

### A. Summary Judgment

Summary judgment is appropriate when the moving party has established that the pleadings, depositions, answers to interrogatories, admissions, and affidavits – if any – demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).  A genuine issue is "real and substantial, as opposed to merely formal, pretended, or a sham." Bazan v. Hidalgo Cnty., 246 F.3d 481, 489 (5th Cir. 2001).  A material fact is one that might influence the outcome of the suit. Id.  Accordingly, a "genuine issue of material fact exists where evidence is such that a reasonable jury could return a verdict for the non-movant." Piazza's Seafood World, L.L.C. v. Odom, 448 F.3d 744, 752 (5th Cir. 2006).

If "the nonmoving party will bear the burden of proof at trial on a dispositive issue," then "a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

"If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim." Norwegian Bulk Transport A/S v. International Marine Terminals Partnership, 520 F.3d 409, 412 (5th Cir. 2008).  The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. Id.

---

Carranza was properly served.  Accordingly, the request for entry of default should be denied.

Additionally, the Court must review all evidence in the light most favorable to the non-moving party. Piazza's Seafood World, 448 F.3d at 752. Factual controversies must be resolved in favor of the non-moving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Murungi v. Xavier Univ. of La., 313 Fed. App'x. 686, 688 (5th Cir. 2008) (unpubl.) (citing Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)). Thus, "in the absence of proof," the court cannot "assume that the nonmoving party could or would prove the necessary facts." Little, 37 F. 3d at 1075. Finally, "a court should not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment." Chacon v. Copeland, 577 Fed. App'x. 355, 360 (5th Cir. 2014) (unpubl.) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)) (internal quotations omitted).

### B. Section 1983

As relevant here, 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Id.

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 144, n. 3 (1979). To prevail upon a § 1983 claim a plaintiff must establish two elements: (1) a constitutional violation; and (2) that the defendants were acting under color of state law when they committed the constitutional violation. Whitley v. Hanna, 726 F.3d 631, 638 (5th Cir. 2013).

**C. Malicious Prosecution**

There is "no such freestanding constitutional right to be free from malicious prosecution." <u>Porter v. Lear</u>, No. 17-30811, 2018 WL 4697145, at *7 (5th Cir. Sept. 28, 2018) (quoting <u>Castellano v. Fragozo</u>, 352 F.3d 939, 945 (5th Cir. 2003) (<u>en</u> <u>banc</u>)). A plaintiff cannot sue under § 1983 for a claim of malicious prosecution. <u>Castellano</u>, 352 F.3d at 945. Rather, a plaintiff must identify which specific constitutional rights were violated. <u>Castellano</u>, 352 F.3d at 953.

**D. Fourth Amendment**

There is a constitutional right to be free from the unreasonable seizure or arrest of one's person. <u>Brower v. County of Inyo</u>, 489 U.S. 593 (1989). The standard for deciding the reasonableness of an arrest under the Fourth Amendment is identical in both civil and criminal cases. <u>Wooley v. City of Baton Rouge</u>, 211 F.3d 913, 925 (5th Cir. 2000) (citing <u>Soldal v. Cook</u>, 506 U.S. 56 (1992)). For that reason, the Court will cite criminal and civil cases interchangeably.

The issuance of a state arrest warrant by a magistrate may insulate an officer from liability for false arrest. "It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." <u>Deville v. Marcantel</u>, 567 F.3d 156, 170 (5th Cir. 2009) (quoting <u>Taylor v. Gregg</u>, 36 F.3d 453, 456 (5th Cir. 1994)). This protection, however, is not absolute. "An officer may lose this protection when he taints the actions of the intermediary – that is to say, if the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable, the officer will not be protected from suit." <u>Porter</u>, 2018 WL 4697145, at *5 (citing <u>Malley v. Briggs</u>, 475 U.S. 335, 344-45 (1986)) (internal quotation marks omitted).

An officer violates the Fourth Amendment when he or she intentionally or recklessly makes a false statement or omits exculpatory material facts in a warrant application. <u>Kohler</u>

v. Englade, 470 F.3d 1104, 1113 (5th Cir. 2006).  Under these circumstances, the officer is not protected from liability by the fact that the warrant was signed by the magistrate. Id.

In order to succeed on a claim of false arrest based on a deficient probable cause affidavit, the plaintiff must demonstrate that the defendants (1) "knowingly or recklessly omitted exculpatory information from the affidavits they submitted in support of the warrant applications" and, (2) that there would not have been probable cause for the arrest "if the omitted information had been included in the affidavits." Johnson v. Norcross, 565 F. App'x 287, 289 (5th Cir. 2014) (unpubl.) (citing Freeman v. Cnty. of Bexar, 210 F.3d 550, 553 (5th Cir. 2000)).  If the affidavit adds false facts or omits exculpatory facts, but a corrected affidavit would still give probable cause for arrest, then the arrest is constitutional. Johnson, 565 F. App'x at 289.

### E. Equal Protection

In order to maintain a "class of one" equal protection claim, a plaintiff must show that "1) he was intentionally treated differently from others similarly situated and 2) ... that there was no rational basis for the difference in treatment." Unruh v. Moore, 326 Fed. App'x. 770, 772 (5th Cir. 2009) (unpubl.) (citing Whiting v. University of Southern Mississippi, 451 F.3d 339, 348 (5th Cir. 2006)).  "Under the rational basis standard, any rational ground for the conduct in question will suffice to defeat the class-of-one claim." Unruh, 326 Fed. App'x. at 772 (emphasis added).

### F. Municipal Liability

A municipality is liable for constitutional violations under § 1983, if the violation was caused by the municipality's policy or practice, or the decision of a final policymaker. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").  Accordingly, to successfully assert a claim against a municipality under § 1983, a plaintiff must show:  (1) that a policymaker acted on behalf of

14

the municipality; (2) that the action constituted an official "policy or custom[;]" and, (3) that the policy or custom was the "moving force" that caused a violation of the plaintiff's rights. <u>Zarnow v. City of Wichita Falls</u>, 614 F.3d 161, 167-71 (5th Cir. 2010).

### G. Abuse of Process

"The elements of an abuse-of-process claim are (1) the defendant misused a regularly issued process – e.g., the issuance of a citation or a writ – for a purpose not lawfully warranted by that particular process, (2) the defendant had an ulterior motive or purpose for misusing the process, and (3) the plaintiff sustained damage from the irregularity." <u>Davis v. West</u>, 433 S.W.3d 101, 110 (Tex. App. 2014) (internal quotation marks omitted). "The focus is on the use of the process once it is properly obtained, not on the motive for originally obtaining the process." <u>Id</u>.

### H. RICO

The Racketeering Influenced Corrupt Organizations Act has both criminal and civil components. <u>H.J. Inc. v. Nw. Bell Tel. Co.</u>, 492 U.S. 229, 253 (1989). "RICO affords a private right of action only to a plaintiff who can show that he or she has been injured 'by reason of' a violation of RICO's criminal prohibitions." <u>Torres v. S.G.E. Mgmt., L.L.C.</u>, 838 F.3d 629, 636 (5th Cir. 2016) (citing 18 U.S.C. § 1964(c)).

"To bring a RICO claim, a plaintiff must prove: (1) the identification of a person, who, (2) through a pattern of racketeering activity, (3) uses or invests income derived therefrom to acquire an interest in or to operate an enterprise engaged in interstate commerce, or acquires, maintains an interest in, or controls such an enterprise." <u>Id</u>. (internal quotation marks omitted).

### III. Analysis

In analyzing Partain's claims, the Court is required to construe allegations by <u>pro se</u> litigants liberally, to ensure that their claims are given fair and meaningful consideration, despite their unfamiliarity with the law. <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972). While the Court will "read <u>pro se</u> complaints liberally, <u>pro se</u> litigants must still comply with the

law and procedural rules." <u>Washington v. E. Baton Rouge Par. Sch. Sys.</u>, 471 F. App'x 306 (5th Cir. 2012).

### A. Civil Rights Claims

The Court will begin by examining the § 1983 civil rights claims, specifically whether either Dennis or Anna Stahl was a state actor, and then turn to the question of whether the City can be held liable under a theory of municipal liability.

### 1. Stahls

Before analyzing the merits of Partain's § 1983 claims, the Court must first determine whether either Dennis or Anna Stahl was a state actor for § 1983 purposes.

In order to hold a defendant liable under § 1983, the plaintiff must establish that the defendant acted "under color of state law" when the deprivation of constitutional rights occurred. <u>Filarsky v. Delia</u>, 566 U.S. 377, 383 (2012). "Private individuals generally are not considered to act under color of law, i.e., are not considered state actors," for purposes of § 1983. <u>Ballard v. Wall</u>, 413 F.3d 510, 518 (5th Cir. 2005).

As to Dennis Stahl, the Court will begin by noting that he was merely a candidate for office during the events that led to Partain's arrest. The arrest warrant was issued on October 29, 2018. Dkt. No. 38-9. Stahl was elected to the city council on November 4, 2014. Dkt. No. 38-2. It appears that Stahl ran for the city council position unopposed. On September 17, 2014, the South Padre Island City Council cancelled the election set for November 4, 2014, because the candidates for that election were "unopposed." <u>Minutes City of South Padre Island City Council Regular Meeting, Wednesday, September 17, 2014</u> (available at https://www.myspi.org/egov/documents/1414703145_12199.pdf).

A non-incumbent candidate for office is not a state actor during the campaign period prior to the election. <u>Melo v. Hafer</u>, 912 F.2d 628, 638 (3d Cir. 1990), <u>aff'd</u>, 502 U.S. 21 (1991). Partain has not cited, and the Court has not found, any case law which states that an unopposed non-incumbent candidate for office is a state actor prior to taking office. While Stahl's election was a certainty – the election had been cancelled because Stahl was the only

candidate – it is the authority of the office, rather than the identity of the office-holder, which is dispositive here.  "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken under color of state law." Angel v. La Joya Indep. Sch. Dist., 717 F. App'x 372, 376 (5th Cir. 2017) (unpubl.) (internal quotation marks omitted) (emphasis added) (citing Monroe v. Pape, 365 U.S. 167, 184 (1961)).

Furthermore, even if the Court considers Dennis Stahl to be a city councilman during the period before Partain's arrest warrant was issued, Stahl is not automatically a state actor simply by virtue of his position on the South Padre Island City Council. Cruz v. Hopper, 73 F. App'x 62, 63 (5th Cir. 2003).  Partain has not cited any actions taken by Dennis Stahl in his position as city councilman; rather, he has cited Stahl's actions in filing a police report against Partain.  The fact that Dennis Stahl was a putative city councilman "is irrelevant" to the § 1983 analysis, unless Partain can show that Stahl's actions were taken in his capacity as a councilman. Id.

Partain has produced no evidence showing that Stahl was acting pursuant to his position on the council.  On October 14, 2014, Dennis Stahl filed a witness statement with the police, giving his version of events. Dkt. No. 50-4, pp. 23-24.  On October 28, 2014, Dennis Stahl had the email exchange with Partain; Detectives Carranza and Rodriguez, and Wilson were copied on the emails. Dkt. No. 50-3.  Other than Dennis Stahl's email signature – which identified him as a city councilman-elect – there is no evidence that Stahl was acting in his position as a putative city councilman when he undertook these actions.  In fact, there is no evidence in the record that Dennis Stahl identified himself to the police officers as a city councilman when he filed his witness statement on October 14, 2014, or that he used his position to urge the officers to arrest Partain.  "Absent specific factual allegations showing that [Dennis Stahl] conspired with police to effectuate the arrests, the conclusory allegation that [Stahl] influenced the police is insufficient to establish state action." Hey v. Irving, 161 F.3d 7 (5th Cir. 1998).  Based upon the record before the Court, there is no genuine dispute of material fact as to this claim.

17

As to Anna Stahl, there is no evidence whatsoever in the record that she was acting under color of state law.  She held no position in any government – either as an elected official or an employee.  Moreover, there is no evidence that she ever interacted with the police in the events leading up to Partain's arrest.  Indeed, there is no basis in the record to even argue that she was a state actor.

The fact that neither Dennis Stahl nor Anna Stahl were state actors, however, does not conclude the inquiry.  "[A] private citizen may be a state actor is if [he or she] is involved in a conspiracy or participates in joint activity with state actors." Moody v. Farrell, 868 F.3d 348, 352 (5th Cir. 2017) (internal quotations omitted).

Merely filing a complaint with the police concerning suspected criminal activity does not automatically turn that complaining witness into a state actor. Moody, 868 F.3d at 353.  Rather, the plaintiff must show "that the police in effecting the arrest acted in accordance with a preconceived plan to arrest a person merely because he was designated for arrest by the private party, without independent investigation." Id. (emphasis added).  The plaintiff may not rely on the fact that the police officer gives great weight to the allegations of a complaining witness in order to turn the complaining witness into a state actor. See Bartholomew v. Lee, 889 F.2d 62, 63 (5th Cir. 1989) (noting that unless a police officer was an eyewitness to an event, the officer must rely on the statements of complaining witnesses and that such reliance "does not convert the informing party into a state actor.").

In those instances where the Fifth Circuit found that a complaining witness was a state actor, there was evidence that the police were arresting people identified by the witness based solely upon a pre-existing agreement, and that the police conducted no further investigation.  For example, in Smith v. Brookshire Bros., 519 F.2d 93, 94 (5th Cir. 1975), the local police department had an agreement with a local store that if the store manager called to report a shoplifting incident, the police would arrest the person identified as the shoplifter, without requiring a valid complaint from the manager or doing any independent investigation.  The Fifth Circuit concluded that this constituted a preconceived plan between the police and the store, transforming the store into a state actor. Id.

In contrast, the Fifth Circuit determined that a complaining witness was not a state actor, where there was evidence of an independent investigation.  In <u>Moody</u>, the Fifth Circuit concluded that where the police: (1) filed investigative reports; (2) independently reviewed the evidence; (3) sought an arrest warrant from a judicial officer; and, (4) that the arrest did not occur "nearly instantaneous[ly]" from the time that the complaint was filed, amounted to evidence of an independent investigation. <u>Moody</u>, 868 F.3d at 353-54.

The facts in the instant case are more akin to the facts of <u>Moody</u> than those of <u>Brookshire</u> <u>Bros</u>.  In this case, the police took witness statements; investigated whether the check cleared into Partain's account; interviewed Partain; and informed Partain that if he could come to an amicable settlement with Stahl, they would consider the matter closed. Notably, there was a 13 day period between when Wilson and Dennis Stahl filed a complaint on October 14th and when the police interviewed Partain on October 27th.  In other words, the police did not arrest Partain until after they had an opportunity to interview Partain and get his side of the story.  Furthermore, the police sought an arrest warrant from a neutral magistrate.  All of these facts show an investigation that may have been flawed, but was not part of a preconceived plan to arrest Partain.

At best, Partain has conjectured that Dennis Stahl used the power of his incoming office to pressure the officers into arresting Partain.  Merely pressuring an officer to make an arrest, however, does not turn a complaining witness into a state actor. <u>Moody</u>, 868 F.3d at 354.  Unless there is evidence in the record, that the pressure "destroyed the independence" of the investigation, then the complaining witness is not a state actor. <u>Id</u>.  There is no evidence in the record that Dennis Stahl or Anna Stahl took any actions which destroyed the independence of the police investigation.

Accordingly, Dennis Stahl and Anna Stahl did not act under color of state law for § 1983 purposes.  There is no genuine dispute of material fact as to this conclusion.  Summary judgment should be granted for all § 1983 claims against Dennis Stahl and Anna Stahl.

### 2. Municipal Liability

Partain has sued the City for violations of his constitutional rights.  The Court will analyze each claim to determine if Partain has shown a genuine issue of material fact that would give rise to municipal liability.

### a. Malicious Prosecution

Partain claims that the City violated his constitutional rights by subjecting him to malicious prosecution.  Simply speaking, this is not a cognizable claim.

There is "no such freestanding constitutional right to be free from malicious prosecution." Porter, 2018 WL 4697145, at *7.  A plaintiff cannot sue under § 1983 for a claim of malicious prosecution. Castellano, 352 F.3d at 945.  Instead, a series of events, which can be colloquially described as a malicious prosecution, would have to lead to violations of specific constitutional rights, before a plaintiff may seek to vindicate those specific constitutional rights. Id.

Partain has claimed that the Defendants' actions in this case violated his Fourth Amendment right to be free from unlawful arrest and violated his Fifth and Fourteenth Amendment rights to equal protection.   To the extent that Partain claims that he was maliciously prosecuted and that such acts violated his Fourth, Fifth, and Fourteenth Amendment rights, his malicious prosecution claim is subsumed into those claims. Castellano, 352 F.3d at 945.  To the extent that he raises a claim of malicious prosecution as a separate, freestanding claim, it is not cognizable under federal law and summary judgment is appropriate.[7]

---

[7] To the extent that Partain is raising a claim of malicious prosecution under state law against the City, he fares no better.  The City has sovereign immunity under the Texas Tort Claims Act for intentional torts, such as malicious prosecution. Liverman v. Denton Cty., No. 02-17-00240-CV, 2017 WL 6377437, at *2 (Tex. App. Dec. 14, 2017) (citing City of Hempstead v. Kmiec, 902 S.W.2d 118, 122 (Tex. App.-Houston [1st Dist.] 1995, no writ)).

### b. False Arrest

Partain claims that he was arrested without probable cause, violating his Fourth Amendment rights.  Because Partain has not shown that any violations of his constitutional rights were undertaken pursuant to an official municipal policy, there is no violation by the City.

As previously noted, to successfully assert a claim against the City under § 1983, Partain must show four things: (1) that his constitutional rights were violated; (2) that a policymaker acted on behalf of the City; (3) that the action constituted an official "policy or custom[;]" and, (4) that the policy or custom was the "moving force" that caused a violation of the plaintiff's rights. Zarnow, 614 F.3d at 167-71 (5th Cir. 2010).  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 563 U.S. 51, 61 (2011).

For the purposes of this Report and Recommendation, the Court will assume that Partain's Fourth Amendment rights were violated when Detective Carranza presented an allegedly misleading affidavit to Magistrate Hemphill.  Furthermore, the Court will assume that Police Chief Smith is a policymaker for the City of South Padre Island as it relates to the conduct of police investigations.  Even with these assumptions, which are not necessarily borne out by the facts, Partain has failed to show a genuine dispute of material fact as to whether Chief Smith took any actions that constituted an official policy or custom for the City.

Partain has failed to establish that Chief Smith, in his role as a policymaker, created a policy or custom which violated Partain's rights.  Partain alleges that when Stahl copied the police chief, Randy Smith, on his email response to Partain, Smith's failure "to stop his detectives from interfering in Partain's and Stahl's business relationship," and to stop Carranza from submitting the allegedly misleading probable cause affidavit, created a city policy.  This is not a correct statement of the law.

21

It is not enough for Partain to claim that Carranza violated his rights and Smith did nothing to stop it. Zarnow, 614 F.3d at 167. ("A municipality may not be subject to liability merely for employing a tortfeasor."); City of St. Louis v. Praprotnik, 485 U.S. 112, 130, 108 S. Ct. 915, 928, 99 L. Ed. 2d 107 (1988) ("the mere failure to investigate the basis of a subordinate's discretionary decisions does not amount to a delegation of policymaking authority" and cannot support municipal liability). Furthermore, it is also not enough to show that Chief Smith was negligent in supervising Carranza. See Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 407 (1997) ("A showing of simple or even heightened negligence will not suffice" to establish municipal liability). Rather, Partain must establish that Smith was deliberately indifferent to Partain's constitutional rights in order for Smith's decisions to create an official policy or custom. Valle v. City of Houston, 613 F.3d 536, 542 (5th Cir. 2010).

Partain has failed to meet this standard. "Deliberate indifference is a stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Brown v. Bryan Cty., OK, 219 F.3d 450, 457 (5th Cir. 2000) (internal quotation marks omitted). This requires proof that Chief Smith knew that Detective Carranza was going to file an allegedly deficient probable cause affidavit and, then, disregarded the obvious consequence of this action – namely, that it would result in an unconstitutional arrest of Partain. See Winston v. City of Shreveport, 390 F. App'x 379, 385 (5th Cir. 2010) ("for an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

While Smith was copied on to emails between Partain, Dennis Stahl and Rodriguez, there is no evidence in the record that Smith had any knowledge of the contents of Carranza's probable cause affidavit. At best, Partain can show that Smith was negligent in not ensuring that Carranza's affidavit was complete in its recounting of the facts; negligence, however, is not enough to rise to the level of deliberate indifference. Alvarez v. City of Brownsville, 904 F.3d 382, 391 (5th Cir. 2018) (en banc).

Indeed, Partain has already admitted that he cannot show deliberate indifference. Partain was asked, in an interrogatory, to "please identify all facts, persons and evidence that you believe establish[es] that Defendants acted in deliberate indifference to deprive Plaintiff of his constitutional rights." Dkt. No. 38-16, p. 2. Partain responded that he "does not believe that any Defendant acted with deliberate indifference to deprive the Plaintiff of his constitutional rights." Id., p. 3. "Although interrogatory responses are not binding judicial admissions, they may be used as evidence for assessing summary judgment." Bradley v. Allstate Ins. Co., 620 F.3d 509, 527, n. 21 (5th Cir. 2010) (internal citations omitted).

Thus, there is no genuine dispute of material fact as to this claim. In sum, the facts lead to the inescapable conclusion that Smith did not create a policy which violated Partain's constitutional rights. Accordingly, the City is entitled to summary judgment as to this claim.

### c. Equal Protection

Partain claims that the City violated his Equal Protection rights when he was arrested and prosecuted in his criminal case. Again, he has failed to show a genuine issue of material fact which would support denial of summary judgement.

"To state a claim under the Equal Protection Clause, a § 1983 plaintiff must either allege that (a) a state actor intentionally discriminated against [him] because of membership in a protected class or (b) he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Gibson v. Texas Dep't of Ins.--Div. of Workers' Comp., 700 F.3d 227, 238 (5th Cir. 2012) (internal citations and quotation marks omitted).

Partain has not claimed membership in a protected class and none is evident from the record.[8] Thus, the question is whether he qualifies for relief under the second type.

---

[8] To the extent that he is raising the first type of claim, the result is the same. Partain has failed to show a basis upon which to find that he was discriminated against based on his membership in a protected class. Under § 1983, the definition of a "protected class" is the same as is used in Title VII discrimination claims. Cervantez v. Bexar County Civil Service Commission, 99 F.3d 730, 734 (5th Cir.1996) ("we have on numerous occasions recognized that

The second type of equal protection claim is often referred to as a "class of one" claim. Unruh v. Moore, 326 Fed. App'x. 770, 772 (5th Cir. 2009) (unpubl.).  In order to maintain a "class of one" equal protection claim, a plaintiff must show that "1) he was intentionally treated differently from others similarly situated and 2) ... that there was no rational basis for the difference in treatment." Unruh, 326 Fed. App'x. at 772 (citing Whiting v. University of Southern Mississippi, 451 F.3d 339, 348 (5th Cir. 2006)).  "Under the rational basis standard, any rational ground for the conduct in question will suffice to defeat the class-of-one claim." Unruh, 326 Fed. App'x. at 772 (emphasis added).

Partain claims that he was subject to class of one discrimination because the City was "unable to produce any response in discovery that they had ever criminally prosecuted a contract on another person." Dkt. No. 50, p. 27.  Construing all facts favorably to the non-movant, it would appear that Partain has facts showing that City officials had never before sought criminal prosecution based on a construction contract dispute.  The Court will assume, for purposes of this Report and Recommendation, that this evidence is sufficient to show that Partain was treated differently than other contractors who are similarly situated.  That assumption, however, does not end the Court's analysis.

Partain must also show that there was no rational basis for the City's decision to seek prosecution against him.  It is not enough to show that the defendants may have acted mistakenly in good faith. Wilson v. Birnberg, 667 F.3d 591, 600 (5th Cir. 2012) (an "error or mistake in judgment" does not violate the Equal Protection clause) (citing E & T Realty v. Strickland, 830 F.2d 1107, 1114 (11th Cir. 1987)).  Again, Partain has failed to show a genuine dispute of material fact that any City employee or officer acted intentionally – without a rational basis for the conduct – to deprive Partain of his rights.

---

section 1983 and Title VII are parallel causes of action").  Title VII prohibits discrimination based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Partain has not identified himself as being a member of any protected class, much less than he was discriminated against based on that membership.  Thus, to the extent such a claim is raised, summary judgment against Partain is appropriate.

Partain attacks the detectives, Rodriguez and Carranza, for submitting the probable cause affidavit, despite Texas caselaw setting forth heightened evidentiary standards to prove theft in a case involving a contract. Dkt. No. 50, pp. 27-28.   Carranza, however, contacted a member of the District Attorney's office to review the facts of the case and determine whether those facts would support a theft charge.   Dkt. No. 38-17.   The attorney advised Carranza that he had sufficient probable cause to have Partain arrested and that "this was not a civil matter based on the information the investigation revealed." Id, pp. 1-2.   The fact that the attorney's advice proved to be legally erroneous does not change Carranza's clear intent, which was to ensure that Partain was not arrested over a non-criminal matter.   Partain has supplied no facts to raise a dispute as to whether Carranza sought legal advice prior to filing the probable cause affidavit.   The undisputed fact of Carranza seeking legal advice provides a rational ground for his conduct.   See E & T Realty, 830 F.2d at 1114 ("Mere error or mistake in judgment when applying a facially neutral statute does not violate the equal protection clause. There must be intentional discrimination.").

There is no genuine dispute of material fact as to the equal protection claims, for which reason, summary judgment should be entered against Partain.

### B. Abuse of Process

Partain has sued Dennis and Anna Stahl for abuse of process under Texas law.   Yet again, summary judgment is appropriate.

Even viewing the complaint under the deference afforded to pro se litigants, Partain did not raise a state law claim of abuse of process in his complaint.   See Dkt. No. 1-1 (complaint clearly listing claims as quantum meruit, violations of constitutional rights under § 1983, and RICO claims).   Either directly or by obvious implication, the complaint does not raise any claims of abuse of process by the Stahls.   The abuse of process claim was raised for the first time in Partain's response to the motions for summary judgment. Dkt. No. 50.   This is not enough.

"A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." Cutrera v. Bd. of Sup'rs of Louisiana State Univ., 429 F.3d 108, 113 (5th Cir. 2005) (citing Fisher v. Metropolitan Life Ins. Co., 895 F.2d 1073, 1078 (5th Cir. 1990)).  Thus, summary judgment is appropriate solely on this basis.  Even if the claim is considered to be properly before the Court, Partain fares no better.

As previously noted, abuse of process claims have three elements: (1) the misuse of a regularly issued process; (2) ulterior motive in doing so; and, (3) damage to the plaintiff. Davis, 433 S.W.3d at 110.  "The focus is on the use of the process once it is properly obtained, not on the motive for originally obtaining the process." Id.  "The 'critical aspect' of an abuse of process claim is the improper use of process after it has been issued." Greer v. Wal-Mart Stores, Inc., No. 3:16-CV-3426-M, 2017 WL 6512558, at *3 (N.D. Tex. Dec. 19, 2017).

Partain claims that Stahl misused the criminal process to extort money from Partain, causing him damage related to the felony conviction.

Even if the Court, for the purpose of this Report and Recommendation, assumes that everything Partain argues is factually correct, his claim still fails.  "Merely issuing or procuring process, even if accompanied by malicious intent or without probable cause is not actionable." RRR Farms, Ltd. v. Am. Horse Prot. Ass'n, Inc., 957 S.W.2d 121, 134 (Tex. App. 1997).  Making an allegedly false police complaint is not an abuse of process, even if the defendant had an ulterior motive in making the false report. Young v. Parent, No. 01-16-00499-CV, 2017 WL 1173895, at *3 (Tex. App. Mar. 30, 2017).  Thus, summary judgment is appropriate as to this claim.

### C. RICO

Partain claims that Dennis Stahl, Anna Stahl, Detective Carranza and Detective Rodriguez used the City as a "racketeering enterprise" to deprive him of his rights.  To the extent this allegation warrants consideration, summary judgment is appropriate.

As set out earlier, "[t]o bring a RICO claim, a plaintiff must prove: (1) the identification of a person, who, (2) through a pattern of racketeering activity, (3) uses or invests income derived therefrom to acquire an interest in or to operate an enterprise engaged in interstate commerce, or acquires, maintains an interest in, or controls such an enterprise." Torres, 838 F.3d at 636. Racketeering activity consists of two or more of the predicate offenses found at 18 U.S.C. § 1961(1). Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer, 90 F.3d 118, 122 (5th Cir. 1996). "[T]o prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989) (emphasis original). The latter requirement – often referred to as the continuity requirement – demands that the plaintiff prove either: "(1) a closed period of repeated conduct; or (2) an open-ended period of conduct that by its nature projects into the future with a threat of repetition." Malvino v. Delluniversita, 840 F.3d 223, 231 (5th Cir. 2016) (internal quotation marks omitted).

Partain has failed to show any evidence that would support a genuine dispute of material fact as to the existence of "racketeering activity." It is not enough, as Partain would have the Court believe, that the Defendants engaged in multiple predicate acts during his criminal proceedings. Instead, when all of the predicate acts took place surrounding a single course of litigation, such conduct does not "constitute or threaten long-term criminal activity." In re Burzynski, 989 F.2d 733, 743 (5th Cir. 1993) (no pattern of racketeering when all of the predicate acts occurred during the litigation of a single civil case).

Furthermore, Partain has failed to show a genuine dispute of material fact as to the continuity requirement. This failure exists, irrespective of the claim's purported nature as closed or open-ended conduct.

Partain cannot demonstrate a closed period of racketeering activity. Conduct which occurs within a single one year period does not demonstrate "a closed period of repeated conduct." Malvino, 840 F.3d at 231. The actions which Partain complains about – his

27

allegedly false arrest and Stahl continuing to make unreasonable demands for payment – occurred between October 2014 and October 2015. Dkt. No. 1-1, p. 8. This period is legally insufficient to demonstrate a closed period of repeated conduct. <u>Malvino</u>, 840 F.3d at 231; <u>see</u> <u>Vemco, Inc. v. Camardella</u>, 23 F.3d 129, 134 (6th Cir. 1994) (seventeen months is insufficient to demonstrate a closed period under RICO);  <u>see also</u> <u>J.D. Marshall Int'l, Inc. v. Redstart, Inc.</u>, 935 F.2d 815, 821 (7th Cir. 1991) (thirteen months is insufficient).  In sum, Partain "alleges only a closed-ended scheme to deprive [him] of [his] property rights. RICO, however, is not concerned with short-term criminal conduct." <u>Foster v. Capshaw</u>, 72 F. App'x 192, 193 (5th Cir. 2003) (citing <u>Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.</u>, 975 F.2d 1134, 1139-40 (5th Cir. 1992)).

Similarly, Partain cannot establish an open-ended period of conduct.  Such a period "may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business. Thus, the threat of continuity is sufficiently established where the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes." <u>H.J. Inc.</u>, 492 U.S. at 242-43. Partain has pointed to no evidence in the record establishing that the alleged predicate acts are part of any of the Defendants' "regular way of doing business."  Nor has Partain pointed to any incident involving any other person where these defendants acted similarly.

Thus, as with his other claims, Partain has failed to establish a genuine dispute of material fact as to essential elements of his RICO claim.  For that reason, summary judgment is appropriate.

### D. Sanctions

Anna Stahl has moved for "the court to impose reasonable sanctions on Plaintiff, including attorney's fees and associated expenses, dismissal of this claim, and/or the prevention of Plaintiff from filing any future litigation without permission of this Honorable Court." Dkt. No. 43, p. 22.  Anna Stahl has made this request pursuant to 28 U.S.C. § 1651 and FED. R. CIV. P. 11. <u>Id</u>, pp. 21-22.

When considering whether to enjoin a vexatious litigant under § 1651, the Court must consider, among other factors, "whether the party had a good faith basis for pursuing the litigation, or simply intended to harass." Matter of Carroll, 850 F.3d 811, 815 (5th Cir. 2017). Similarly, under Rule 11, the Court must find that a party acted in bad faith or with "an improper purpose" to support the imposition of sanctions. Bergquist v. FyBX Corp., 108 F. App'x 903, 904 (5th Cir. 2004).

Those standards have not been met in this case.  While the Court is recommending that the motions for summary judgment be granted in this case, it also finds that Partain had a good faith basis for pursuing his claims.  To the extent that Partain's complaint failed to overcome summary judgment, it was the result of "misguided legal research rather than a failure to attempt a reasonable inquiry into the law or an intent to harass." Bergquist, 108 F. App'x at 905.  Accordingly, sanctions are not appropriate in this case and should be denied.

## IV. Recommendation

It is recommended that the motions for summary judgment filed by the City of South Padre Island, Dennis Stahl and Anna Stahl be granted. Dkt. Nos. 38, 43.  It is recommended that summary judgment be granted for all claims made against Victor Carranza in his official capacity as being claims made against the City of South Padre Island.

It is further recommended that judgment be entered for the City of South Padre Island, Victor Carranza, Dennis Stahl, and Anna Stahl, as to all of Partain's claims and that Partain take nothing, with each party responsible for its own fees and costs.

It is recommended that the motion for sanctions filed by Anna Stahl be denied.

It is recommended that the motion for entry of default against Victor Carranza be denied.

29

**A. Notice to Parties**

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Rolando Olvera, United States District Judge. 28 U.S.C. § 636(b)(1).  Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district court, except upon grounds of plain error or manifest injustice. Alexander v. Verizon Wireless Servs., L.L.C., 875 F.3d 243, 248 (5th Cir. 2017).

DONE at Brownsville, Texas, on December 5, 2018.

_____
Ronald G. Morgan
United States Magistrate Judge